■ RICHARD H. DAVIMOS, JR., Respondent, v JOHN HALLE, Appellant. [826 NYS2d 61]—

Judgment, Supreme Court, New York County (Karla Moskowitz, J.), entered July 19, 2005, in an action on a guaranty, awarding plaintiff the principal sum of $1 million, unanimously reversed, on the law, with costs, the judgment vacated, plaintiff's motion for summary judgment denied and the matter remanded for further proceedings.

In his amended complaint, plaintiff alleged that in exchange for his advance of $1 million in the film project "My First Mister," defendant guaranteed payment of any unpaid principal and interest to plaintiff in the event nonparty 1st Mister, Inc. or

its parent company, Total Film Group (TFG), defaulted on their respective obligations to repay the loan. Plaintiff further alleged that he was also induced by two other guaranties arranged by defendant that were represented to plaintiff as guaranteed sources of complete and prompt repayment of the $1 million loan.

In support of his motion for partial summary judgment, plaintiff asserted that he and his father lent 1st Mister, Inc. $1 million that has not been repaid, that on December 20, 1999, defendant executed a guaranty with respect to that loan, that additional guaranties were executed on December 20, 1999 by TFG and its president Gerald Green, that defendant failed to pay his obligation under the guaranty, and that defendant was paid $50,000 by TFG for having secured plaintiff's investment. The guaranty annexed to plaintiff's moving papers is dated December 20, 1999, and provides, in pertinent part that "[t]he Guarantor [defendant] hereby unconditionally and absolutely guarantees the full and prompt payment of *One* Million Dollars ($1,000,000) of the *Two* Million Dollars ($2,000,000) due on *December 17, 2001* under that certain promissory note dated *December 17, 1999* (the note), executed by the Company [1st Mister, Inc.] in favor of [plaintiff] . . . referred to herein as the 'Guaranteed Obligation' " (emphasis added). The guaranty further provides that it is a continuing, absolute and unconditional obligation regardless of any "amendment or modification of, or supplement to, or extension or renewal of, the Guaranteed Obligation." The promissory note annexed to plaintiff's moving papers is dated *December 20, 1999*, and was made by 1st Mister, Inc. to plaintiff for *$1 million*.

In opposition, defendant asserted that he gave a $1 million personal guaranty for a $2 million loan pursuant to a *December 17, 1999* promissory note, that such note was never executed by plaintiff and TFG, and that in January 2000, plaintiff and TFG entered negotiations and came to terms on a different agreement that was executed in March 2000 and with respect to which defendant was neither a party nor a guarantor. Defendant further asserted that neither he nor plaintiff intended that he act as guarantor of the later loan, that in fact he never did, that the various documents were not intended to be a unified transaction, and that the subsequent loan agreement between plaintiff and TFG was amended several times without his knowledge or consent.

The IAS court granted plaintiff summary judgment on his first cause of action sounding in breach of contract, finding relevant TFG's receipt of plaintiff's money and failure to pay it

back, the guaranty signed by defendant, defendant's bringing the parties together and active participation in the transaction and TFG's payment to defendant of a $50,000 fee upon the closing of the deal. We reverse.

A guaranty must be construed "in the strictest manner" (*White Rose Food v Saleh*, 99 NY2d 589, 591 [2003]). While an absolute and unconditional guaranty agreement is independent and stands alone in imposing obligations on the guarantor, a guarantor's obligation "cannot be altered without its consent; if the original note is modified without its consent, a guarantor is relieved of its obligation" (*id.*). On a motion for summary judgment to enforce an unconditional guaranty, the creditor must prove the existence of the guaranty, the underlying debt and the guarantor's failure to perform under the guaranty (*City of New York v Clarose Cinema Corp.*, 256 AD2d 69, 71 [1998]).

The various guaranties, promissory notes and loan agreements in the record undermine, rather than support, plaintiff's claim that, read together, they create a binding obligation on defendant. Rather than elucidate plaintiff's claim, the documents obscure it, creating factual issues as to whether the unpaid note is the one referred to in the guaranty, and whether the loan terms were changed or replaced in such a manner that the deal was never consummated and the guaranty rendered null and void. Accordingly, the motion for summary judgment was erroneously granted.

More particularly, issues of fact include, but are not limited to, the existence of a note dated December 17, 1999, referred to in the guaranty but never produced. Plaintiff weakly explains that the note actually guaranteed was the one dated *December 20, 1999*, and that the reference in the guaranty to a December *17*, 1999 note was a clerical error. However, clerical errors cannot fully explain other differences between the guaranty and the December 20 note, such as the change of loan amount from $2 million to $1 million, the addition of a new term specifying two $500,000 installments, and the maturity date change from December 17, 2001 to December 19, 2001. Whether, as plaintiff contends, the date and dollar amount changes resulted from "sloppy" draftsmanship is itself essentially a factual issue. Further undermining the alleged connection between the guaranty and the December 20 note is the lack of any reference in that note to the guaranty. The very formal "Loan and Security Agreement" dated January 1, 2000, which is specifically referred to in the December 20 note, also lacks any reference to the guaranty and does not in any way indicate that the December 17 note was being modified or rescinded. No claim is made that

defendant signed a second guaranty in connection with either the January 1, 2000 agreement or the second note.

In addition, plaintiff's own testimony, which equivocated as to what documents, if any, he signed and when he signed them, creates rather than eliminates issues of fact. His insistence that his deals were with only defendant is contrary to the documentary evidence, most of which bears 1st Mister's name. TFG's attorney during part of the relevant time period recalled that the December 20 note and January 1, 2000 agreement were vigorously negotiated and renegotiated subsequent to the guaranty that defendant executed, and that defendant had been willing to guaranty $1 million of a $2 million deal (as reflected in the December 17 note) but that he was not willing to guaranty $1 million of a $1 million deal. According to the attorney, because the numbers had changed, he believed a new personal guaranty would have to be issued, raising additional issues of fact as to whether the December 20 note and January 1 agreement were new and separate agreements rather than mere modifications of the December 17 note. Concur—Mazzarelli, J.P., Andrias, Nardelli, Gonzalez and Malone, JJ.